**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Valsoft Corporation, Inc.

    v.                                      Case No. 19-cv-672-JL

Joseph Adam Bacalan

**REPORT AND RECOMMENDATION**

The plaintiff, Valsoft Corporation, Inc. ("Valsoft"), brought suit against Joseph Adam Bacalan alleging a breach of contract claim arising from an unpaid debt. The debt relates to a personal guaranty (the "Guaranty") Bacalan signed which guaranteed payments to Valsoft by Connect Express, LLC ("Connect Express"). On April 1, 2020, the Clerk of Court entered default against Bacalan for failure to file an answer following the court's denial of his motion to dismiss. Doc. no. 15. Before the court for Report and Recommendation is Valsoft's motion for default judgment (doc. no. 16). See Fed. R. Civ. P. 55(b)(2). The defendant has not objected. For the reasons that follow, the court recommends that the plaintiff's motion be granted in part and denied in part.

**Standard of Review**

After default is entered and when the amount at issue is not a sum certain, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); see also KPS &

Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 18-19 (1st Cir. 2003).  Before entering a default judgment, the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action."  Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (citing Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)).  The defaulted party is "taken to have conceded the truth of the factual allegations in the complaint . . . ."  Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62–63 (1st Cir. 2002) (quoting Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999)).  The defaulted party does not, however, "admit the legal sufficiency of [the] claims."  10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013).  In short, "before entering default judgment, the court must determine whether the admitted facts state actionable claims."  United States v. Sullender, No. 16-cv-523-LM, 2018 WL 1368040, at *1 (D.N.H. Mar. 16, 2018) (citation omitted).

## Background

By virtue of its default, Bacalan concedes the following facts alleged in Valsoft's complaint.  Connect Express, LLC, a Tennessee limited liability company with its principal place of business in Tennessee, provides a range of shipping services,

including regional truck shipping in the southeastern United States.  On January 31, 2017, Connect Express entered into an agreement (the "Agreement") with Profit Tools, Inc. ("Profit Tools"), a New Hampshire corporation with its principal place of business in New Hampshire, by which Connect Express enrolled in Profit Tools' "Fuel Discount Program."  See Doc. no. 1-1.  Profit Tools supplied "fuel cards" and occasionally "virtual checks" for Connect Express truckers to purchase discounted gas at participating service stations, among other things.  The Agreement required Connect Express to pay invoices issued by Profit Tools for purchases with the fuel cards.[1]  Connect Express would make these payments by ACH bank debit on the date of invoicing.  Also on January 31, 2017, Bacalan, who had a financial interest in Connect Express,[2] entered into a Guaranty with Profit Tools by which he guaranteed Connect Express' payments under the Agreement.[3]  See Doc. no. 1-1 at 2.

---

[1] Valsoft asserts that the Agreement also required Connect Express to pay invoices for purchases made with the virtual checks.  This contention is unsupported by the language of the Agreement and is addressed below.

[2] The Agreement indicates that Bacalan is both owner and president of Connect Express.

[3] While Bacalan signed the Agreement and Guaranty as "Joseph Adam Bacalan," the "Account Contact Information" section lists "Adam Bacalan" as the owner and president of Connect Express. However, as the Agreement also lists Bacalan's title as

3

In March 2018, Valsoft purchased some of Profit Tools' assets, not including the fuel discount business. Profit Tools changed its name to Envio, Inc. ("Envio"). Envio continued the fuel discount program, supplying fuel cards and virtual checks to Connect Express. During this time, Connect Express fell behind in its payment obligations. Connect Express and Envio established a payment plan and Connect Express paid almost all of the outstanding balance.

In December 2018, Valsoft acquired the fuel discount business from Envio; Envio assigned its rights and obligations under the Agreement to Valsoft. From then on, Valsoft continued supplying fuel cards and checks to Connect Express. By January 2019, Connect Express had again fallen behind on its payments. Valsoft issued an invoice on January 23, 2019 – Connect Express made a partial payment and failed to pay the balance. Connect Express did not make any payments on the invoices issued on February 13, 2019 and February 20, 2019. It also failed to make payments for virtual checks issued to Connect Express from February 13-18, 2019. Valsoft alleges that Connect Express

---

"President" and there is no information suggesting that another person with the last name Bacalan was involved in the transaction, it appears that the contact information and signatures throughout the Agreement and Guaranty refer to the defendant.

currently owes $126,350.49 under the Agreement and that both Connect Express and Bacalan have failed to pay.

## Discussion

Valsoft brings a single breach of contract claim against Bacalan and seeks $126,350.49 in damages for the amount owed under the Agreement and Guaranty, plus interest.  It also seeks attorneys' fees and costs in the amount of $18,779.13.

I. Liability

Under New Hampshire law,[4] "a breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." BAE Sys. Info. and Elecs. Sys. Integration, Inc. v. SpaceKey Components, Inc., 941 F. Supp. 2d 197, 213 (D.N.H. 2013) (brackets omitted) (quoting Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 668 (2013)), aff'd, 752 F.3d 72 (1st Cir. 2014).

Under the Agreement, Connect Express was required to pay

---

[4] As specified in the Guaranty's choice-of-law clause, the court applies New Hampshire law. See Doc. no. 1-1 at 2; Ferrofluidics Corp. v. Advanced Vacuum Components, Inc., 968 F.2d 1463, 1467 (1st Cir. 1992) ("Where the contracting parties select the law of a particular jurisdiction to govern their affairs, as a rule New Hampshire courts will honor their choice 'if the contract bears any significant relationship to that jurisdiction.'" (quoting Allied Adjustment Serv. v. Heney, 125 N.H. 698 (1984))).

invoices for purchases made using the fuel cards. See Doc. no. 1-1 at 2. In its complaint, Valsoft alleges that Connect Express made only a partial payment on the January 23, 2019 invoice[5] and failed to make any payment on the February 13, 2019 invoice, the February 20, 2019 invoice, or the virtual checks issued to Connect Express from February 13-18, 2019. See Doc. no. 1 at 3. The default judgment affidavit also asserts that Connect Express is responsible for the remaining balance under a payment plan.[6] Doc. no. 16-2 at 3. Valsoft alleges that Bacalan breached the Guaranty by failing to pay these amounts. Doc. no. 1 at 4.

The invoices for fuel card charges are covered by the terms of the Agreement and Connect Express failed to make the payments as required. See Doc. no. 1-1. Further, as to the three invoices, Bacalan breached the Guaranty by failing to pay these amounts on behalf of Connect Express. See id. The Agreement,

---

[5] The invoice provided by Valsoft (doc. no. 16-4) does not reflect the partial payment. However, as Ms. Romero, in her affidavit (doc. no. 16-2), asserts personal knowledge of the payment and the reduction in the amount due on the invoice does not benefit Valsoft, the court accepts the remaining balance on the January 23, 2019 invoice asserted by Valsoft as the correct amount due.

[6] While this payment plan is not mentioned in the complaint, it appears that the amount due on the payment plan was included in Valsoft's initial calculation of the total debt.

however, does not mention "virtual checks" or provide for a "payment plan."  See id.  Moreover, Valsoft has not argued that the breach of contract claim, as to the checks and payment plan, relies on the parties' course of dealing or another alternative basis.  Thus, the breach of contract claim cannot survive as to those two amounts.  Accepting Valsoft's allegations as true, Bacalan breached his obligations under the Agreement and Guaranty as to the three invoices, but not as to the virtual checks or payment plan.

## II. Damages[7]

"In the case of defaulting defendants, allegations of damages are not deemed admitted in the context of a default judgment, and it is the plaintiff's burden to establish any entitlement to recovery."  Joe Hand Promotions, Inc. v. Rajan, No. 10-40029-TSH, 2011 WL 3295424, at *3 n.2 (D. Mass. July 28, 2011) (internal quotation marks and citation omitted).  Valsoft seeks to recover damages for (1) the amounts due under the Agreement and Guaranty, plus interest and (2) attorneys' fees and costs.

---

[7] The court did not hold a hearing on damages.  Rule 55(b)(2) "makes an evidentiary hearing an available tool, not a prerequisite, to the determination of a damage award." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 436 (1st Cir. 2015).

A. <u>Contractual damages and interest</u>

Valsoft seeks $126,350.49 in damages for Bacalan's failure to pay the unpaid charges under the Guaranty. The affidavit of Valsoft paralegal Pamela Romero, filed with Valsoft's motion for default judgment, specifies that the damages claim includes the following unpaid amounts: $28,068.97 from the partially paid invoice of January 23, 2019; $46,214.76 from the February 13, 2019 invoice; $39,891.72 from the February 20, 2019 invoice; $11,558.36 from unpaid fuel checks; and $616.68 from the unpaid balance under the payment plan. <u>See</u> Doc. no. 16-2 at 2-3. The three invoices for fuel card charges are recoverable under the terms of the Agreement and Guaranty, with one minor adjustment. There is a discrepancy regarding the February 20 invoice – the affidavit (doc. no. 16-2) lists the amount due as $39,891.72, but the actual invoice sets that amount fifty cents lower, at $39,891.22. The invoice is the most direct and accurate evidence of the proper amount due; the court will therefore reduce the damage amount by fifty cents.

As detailed above, the $11,558.36 for unpaid fuel checks and the $616.68 payment plan balance are not covered by the terms of the Agreement and cannot be recovered.[8]

---

[8] In addition to the legal deficiencies, the court notes that the documents submitted by Valsoft to support these two

For these reasons, the court recommends that the district judge award damages in the amount of $114,174.95, plus interest.[9]

B. Attorneys' fees and costs

The Guaranty states that the "[g]uarantor agrees to pay all reasonable costs and attorneys' fees incurred by Profit Tools, Inc. in enforcing this guaranty." Doc. no. 1-1 at 2. Valsoft is Profit Tools' successor-in-interest, see Doc. no. 1, and has requested $18,779.13 in attorneys' fees and costs. Doc. no. 16.

"The lodestar approach is the method of choice for calculating fee awards." Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015) (citations omitted). Under this approach, a district court first "calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary.'" Cent. Pension Fund of the Int'l Union

---

amounts (doc. nos. 16-7 & 16-8) are not readily identifiable as authentic business records. While it is a close call as to whether, when considered alongside Ms. Romero's affidavit (doc. no. 16-2), they would be enough to merit default judgment, the court need not reach that issue.

[9] As the Agreement does not include an interest provision, Valsoft may only recover interest as provided under New Hampshire law. See Doc. no. 1-1; see also N.H. Rev. Stat. Ann. § 524:1-b; Healy v. Franklin Elec. Co., No. 08-cv-503-PB, 2011 WL 32522, at *1 (D.N.H. Jan. 5, 2011) (citing Commercial Union Ins. Co. v. Walbrook Ins. Co., 41 F.3d 764, 772 (1st Cir. 1994)) ("State law applies to an award of prejudgment interest in diversity suits.").

9

of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  The court then determines "a reasonable hourly rate or rates — a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." Id. (citation omitted).  Multiplying the results of these two inquiries yields the lodestar amount.  Id.  The court may then adjust the potential award based on factors not captured in the lodestar calculation.  See Hensley, 461 U.S. at 434 & n.9; Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997).  "The party seeking the [fee] award has the burden of producing materials that support the request."  Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011) (citing Hensley, 461 U.S. at 433).

    Here, Valsoft has provided affidavits and bills from both out-of-state and local counsel.  It asserts that out-of-state counsel, Rich May, is entitled to $14,961.15 in fees and $611.48 in costs.  See Doc. no. 16-9 at 3.  The fees are further broken into fees generated by Attorneys Gaeta and Donoghue.  Rich May applied a 10% discount to its bill throughout this case. Attorney Donoghue billed for 9.5 hours at a rate of $235 per hour, for a total of $2,232.50.  Based on the billing records

and Attorney Donoghue's experience, both the hours and the rate are reasonable and the plaintiff is entitled to recover those fees.

Attorney Gaeta billed for 33.9 hours at a rate of $390 per hour. Based on the billing records and Attorney Gaeta's experience, those figures are reasonable as well. However, it appears that Valsoft has made a calculation error. It asserts that 33.9 hours at $390 per hour results in a fee total of $14,391. However, according to the court's calculations, the correct total is $13,221. Thus, the combined fees should be $15,453.50. Factoring in the 10% discount, the total is $13,908.15. When added to the $611.48 in reasonable costs, Rich May's total for fees and costs is $14,519.63.

Valsoft asserts that its local counsel, Hage Hodes, is entitled to $2,694.50 in fees and $512 in costs. See Doc. no. 16-11. Attorney Hage billed for 2.8 hours at a rate of $400 per hour and Attorney Hedges billed for 6.7 hours at a rate of $235 per hour. Based on the billing records and the experience of Attorneys Hage and Hedges, the claimed fees are reasonable. When added to the $512 in reasonable costs, Hage Hodes' total for fees and costs is $3,206.50.

Based on the court's analysis of the affidavits and billing records of Valsoft's attorneys, it recommends that the district

11

judge award $17,726.13 in fees and costs.

## Conclusion

For the foregoing reasons, the court recommends that the district judge: (1) grant Valsoft's motion for default judgment (doc. no. 16) on its breach of contract claim as to the unpaid amounts for fuel card use; (2) deny the motion for default judgment as to the amounts related to virtual checks and the payment plan; (3) award Valsoft $114,174.95, plus interest; and (4) award Valsoft $17,726.13 in attorneys' fees and costs.

Any objection to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

August 4, 2020

cc: Frank N. Gaeta, Esq.
    Katherine Elisabeth Hedges, Esq.
    Jamie N. Hage, Esq.
    Joseph Adam Bacalan, Pro se